## Frank P. Strobot, Appellee, v. William Cordes, Appellant.

### Gen. No. 22,281.

1.   ATTACHMENT, § 338*—*what need not be shown to maintain action for wrongfully suing out writ.*   Malice or want of probable cause need not be shown to maintain an action on the case to recover damages for the wrongful suing out of a writ of attachment.

2.   ATTACHMENT, § 338*—*when probable cause and want of malice may be shown in defense to action for wrongfully suing out writ.*   Good faith and want of probable cause in suing out a writ of attachment are immaterial in an action on the case to recover damages for the wrongful suing out of such writ, when actual damages only are sought, but probable cause and want of malice may be shown in defense where punitive damages are sought in addition to actual damages.

3.   ATTACHMENT, § 338*—*when probable cause and want of malice in suing out writ of is shown.*   Evidence *held* to show that defendant had probable cause in suing out an attachment writ against plaintiff and that he sued out same without malice and after plaintiff had left the State and was concealing himself so that process could not be served upon him, in an action on the case to recover damages for suing out such writ.

4.   ATTACHMENT, § 337*—*when defendant in attachment action estopped to complain that writ was wrongfully sued out.*   Where plaintiff, at his own solicitation, after an attachment action was begun against him, voluntarily and understandingly compromised and settled the suit, *held* that he was estopped to complain that the attachment writ was wrongfully sued out, in an action on the case to recover damages for the wrongful suing out of such writ.

5.   COMPROMISE AND SETTLEMENT, § 16*—*when evidence shows voluntary compromise of attachment action.*   Evidence *held* to show that plaintiff voluntarily and understandingly entered into a compromise and settlement with defendant of the matters in controversy in a certain attachment action by defendant against plaintiff, and that such suit was dismissed by reason of said compromise, in an action on the case to recover damages for the wrongful suing out of the writ.

Appeal from the Circuit Court of Cook county; the Hòn. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Reversed with finding of fact. Opinion filed October 10, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

M. D. DOLAN and JACOB C. SIMON, for appellant; FREEMAN K. BLAKE, of counsel.

WEBSTER & SHERRARD, for appellee; DANIEL WEBSTER and ARTHUR A. SHERRARD, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This is an action on the case brought to recover damages for the wrongful suing out of a writ of attachment. The case was tried before the court and jury; there was a verdict for $2,350 in favor of appellee, upon which judgment was entered, to reverse which this appeal is prosecuted.

There were several counts in the declaration, but we will not go into a detailed analysis of them as to their sufficiency, for the reason that in no view of the case can the judgment be upheld.

The record discloses that appellant on the 19th of September, 1912, brought suit in attachment in the Municipal Court of Chicago against appellee, seeking to recover $226.99. On the 27th of September, 1912, appellee procured his creditors, including appellant, to enter into a written composition and settlement of their claims against him for twenty-five cents on the dollar. After this agreement was executed, the money therein specified was paid to each of the creditors in settlement in full of their respective claims and on the 8th of October following, appellant dismissed the attachment suit.

Appellant contends that the defendant in an attachment suit cannot maintain an action not based upon the bond given in that suit but sounding in tort as in the instant case, without proof of malice or want of probable cause. This is not the law. *First State Bank of Pond Creek v. Clark,* 202 Ill. App. 283. Where in such a case actual damages only are sought to be recovered, the good faith and want of probable cause

in suing out the writ of attachment is immaterial; but where it is sought to recover in addition to actual damages, punitive damages, then probable cause and want of malice in suing out the writ may be shown as a defense to the element of punitive damages. *Talbott v. Great Western Plaster Co.*, 151 Mo. App. 538; 4 Cyc. 768; *McLaughlin v. Davis*, 14 Kan. 135.

The declaration avers, *inter alia*, that appellee was engaged in the pickle business in Chicago; that he was indebted to appellant in the sum of $226.99, which he was able and willing to pay; that appellant, maliciously intending to injure and deprive appellee of his business, sued out a writ of attachment in the Municipal Court of Chicago and levied on "Two barrels of pickles and seventeen crates of bottles"; that $200 which appellee had on deposit in a Chicago bank was garnished; that the attachment suit was afterwards dismissed by appellant; that appellee was "greatly injured in his good name, reputation, business and trade"; that divers persons who had theretofore dealt with appellee in his business refused on account of the attachment to continue to do so.

Appellee testified that he had been purchasing supplies from appellant for a number of months prior to the attachment suit and that there was a balance due appellant from him, and that appellant had made repeated demands for payment; that on September 17th he left his place of business and went to St. Paul, Minnesota; that afterwards on the 21st of September he returned and found his place closed by the bailiff of the Municipal Court; that thereafter (the date does not appear) he reopened his place of business and conducted it for a short time and then sold the business. He further testified that he was worth from $3,000 to $4,000.

The evidence also shows that when appellee went to St. Paul he did not advise any one as to where he was going or when he would return; that while there

he wrote a card to one of his employees, who was in charge of his business during his absence, stating: "I am done with pickles and sauer kraut forever"; that he also wrote a postal card to appellant saying: "I am leaving town. Don't worry for money"; and a letter to Mr. Henning, one of his creditors as follows:

"Dear Sir:—Mr. Henning as I owe you long bunch of bills I will say to you that I will pay all in the name of Honor. I send to you all my bills to collect and my driver Charlie knows all the customers, so I wish you would get a collector and collect all you can and I will pay the rest, as I am disgusted all together. Luck is against me. I have property to meet all my bills, but I do not like to loose it. Now I will take a few weeks off to forget my downfall."

Each of these cards and the letter was postmarked St. Paul and was written prior to the attachment suit. The evidence further shows that appellant went to his attorney, who had been practicing law for upwards of twenty years in Chicago, laid the facts before him, and the attorney advised that attachment be brought. Before this was done appellant and his attorney examined the records in the recorder's office and made other investigations to ascertain what property was owned by appellee, etc. Appellant also called at appellee's home to ascertain his whereabouts, but was informed that they did not know where appellee was nor when he would return. After the institution of the attachment suit and prior to the levy, appellant and his attorney, together with the bailiff, went to his place of business and found an employee in charge. Some of the effects appeared to have been removed, but the business was still being conducted by appellee's representative, who stated that he did not know where appellee was nor when he would return. Thereupon the levy was made upon two barrels of pickles and seventeen crates of bottles, and the money

in the bank garnished as above stated. The evidence further shows that an involuntary petition in bankruptcy was filed in the federal court by appellee's creditor Henning on September 23rd; that after appellee returned to Chicago, at his solicitation he procured his creditors, including appellant, to enter into a composition settlement whereby their claims were settled by appellee's paying twenty-five per cent. thereof; that appellee borrowed $1,000 with which to make this settlement, and a few days afterwards, on October 8th, appellant's counsel and appellee's counsel appeared in the Municipal Court, and on motion of appellant the garnishee was discharged and the suit dismissed.

From a careful consideration of the evidence, it is clear that appellee was not ready and able to pay appellant, but on the contrary he was unable to do so; that he was clearly insolvent. We are further of the opinion that the writ in the attachment suit was not maliciously and wrongfully sued out, but on the contrary we think that appellant used the utmost good faith in the matter. He made a careful examination of the facts and acted upon the advice of his counsel. The attachment suit was not tried; no evidence was introduced in that case, but it was abandoned on account of the settlement. However, we think the evidence clearly shows that appellee had left Illinois and was concealing himself, so that process could not be served upon him, and this was legal cause for suing out the writ.

We are also of the opinion that the evidence utterly fails to show that appellee sustained any damages as alleged in his declaration. It is argued that appellee was conducting a fairly successful business, and that on account of the attachment proceeding involuntary bankruptcy proceedings were started against him, and, as a consequence thereof, all of appellee's creditors insisted upon immediate payment and appellee's business was thereby destroyed. The difficulty with this

contention is that there is not a word of evidence to sustain it. The petition in bankruptcy was filed by appellee's creditor Henning, and an examination thereof discloses that the only ground of bankruptcy there averred was that appellee did "on the 16th day of September, A. D. 1912, convey, transfer, conceal and remove part of his property with intent to hinder, delay and defraud his creditors." The attachment suit was not begun until September 19th, and while the petition was not filed until a few days after the attachment suit was begun, there is not a scintilla of evidence that the petition in bankruptcy was in any way brought about by the attachment suit. Likewise there is not a word of testimony or evidence of any kind in the record that appellee's creditors insisted upon payment of their claims or that any person refused to do business with appellee because of or on account of the attachment suit. Moreover, we think that the evidence demonstrates that appellee's place of business was not closed by the bailiff. It is true that appellee testified that when he returned from St. Paul he found the place closed by the bailiff; but appellant and his attorney both testified that the place was not closed and that but two barrels of pickles and seventeen crates of bottles were removed and taken to a warehouse. The undisputed evidence shows that there were fifty or sixty barrels of pickles left in the basement, and appellee's representative who was in charge of the place testified that he continued to conduct the business until appellee afterwards sold it, and that the same customers continued to do business with appellee as before.

Appellee at his own solicitation after the attachment suit was begun compromised and settled with appellant. The compromise was voluntarily and understandingly made. Under these circumstances, therefore, appellee cannot be heard to say that the writ of attachment was wrongfully sued out. *Emery*

*v. Ginnan,* 24 Ill. App. 65; *Hibbard, Spencer, Bartlett & Co. v. Ryan,* 46 Ill. App. 313.

Appellee, however, maintains that the evidence concerning the compromise is conflicting and, therefore, the question should be left to the jury. Appellant's attorney testified that at the meeting of the creditors nothing was said about the dismissal of the attachment suit. Appellant testified that at the creditors' meeting, at which appellee, the other creditors, attorneys and himself were present, it was agreed that the payment of twenty-five per cent. of appellant's claim should be in full, and if this were done appellant would be required to release the money garnished and return the pickles and bottles taken under the writ of attachment. This evidence clearly shows that there was a compromise and settlement and is in no way contradicted by the testimony of the attorney, as the dismissal of the attachment suit was a necessary result following the settlement. That suit could not be prosecuted after the subject-matter thereof had been settled by the parties.

As appellee failed to make out his case in any view of the evidence, the court should have peremptorily instructed the jury to find for appellant. The judgment of the Circuit Court of Cook county will therefore be reversed with a finding of fact.

*Reversed with a finding of fact.*

Finding of fact. The court finds that appellee voluntarily and understandingly entered into a compromise and settlement with appellant of the matters in controversy in the attachment suit, and that that suit was dismissed by reason of said compromise. The court further finds that appellee has failed to prove that he has suffered any of the damages which are alleged in his declaration. The court further finds that appellant had probable cause in suing out the attachment writ and that the same was sued out with-

out malice. The court further finds that appellant, defendant in the attachment suit, had left the State and was concealing himself so that process could not be served upon him.