(No. 46554 )

## TOM OLESKER'S EXCITING WORLD OF FASHION, INC., Appellant, v. DUN & BRADSTREET, INC., Appellee.

*Opinion filed May 19, 1975.—Modified on denial of rehearing September 24, 1975.*

Foos and Sexner, Ltd., of Chicago (William L. Meyers, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels, and James C. Munson, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiff, Tom Olesker's Exciting World of Fashion, Inc., a clothing retailer, on March 3, 1970, filed a complaint in the circuit court of Cook County against the defendant, Dun & Bradstreet, Inc., a national credit reporting agency. The complaint charged that the defendant on January 22, 1969, published a business information sheet, or credit report, which falsely reported the financial state of the plaintiff's business, causing injury to its general and business reputation. The first count of the complaint alleged a malicious publication of the allegedly libelous

report, and count II charged the defendant with negligence in preparing and publishing the report. The third count claimed that the publication of the report amounted to a malicious interference with the plaintiff's opportunity to obtain credit and enter into contracts with third persons.

The defendant filed a motion to dismiss the complaint on a number of grounds, including the ground that any cause of action alleged was barred by the one-year statute of limitations for defamation. (Ill. Rev. Stat. 1971, ch. 83, par. 14.) The circuit court allowed the motion. The appellate court affirmed the trial court's dismissal of counts I and II of the complaint, holding that the cause of action for libel accrued, if at all, at the time the defendant's credit report was received by its subscribers. Since the complaint itself alleged that date to have been more than one year prior to the filing of the complaint, the appellate court stated that prosecution was barred by the one-year statute of limitations for libel. The appellate court reversed the trial court's holding as to count III on the ground that the count was a civil action with a five-year statute of limitations. (Ill. Rev. Stat. 1969, ch. 83, par. 16.) The court remanded to the circuit court and stated that on remand the plaintiff should be allowed leave to amend as to that count. (16 Ill. App. 3d 709.) We granted the plaintiff's petition for leave to appeal from the appellate court's judgment as to counts I and II. The defendant then, under Rule 318(a), asked us to reverse the appellate court's judgment as to count III of the complaint.

Our statute of limitations which relates to suits for defamation provides: "Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." Ill. Rev. Stat. 1971, ch. 83, par. 14.

It has been generally held that in defamation cases the cause of action accrues and the statute of limitation begins

to run on the date of publication of the defamatory material. (*Winrod v. Time, Inc.,* 334 Ill. App. 59; see *Wheeler v. Dell Publishing Co.* (7th Cir. 1962), 300 F.2d 372; *Insull v. New York World-Telegram Corp.* (N.D. Ill. 1959), 172 F. Supp. 615, *aff'd* (7th Cir. 1959), 273 F.2d 166; *Winrod v. MacFadden Publications, Inc.* (7th Cir. 1951), 187 F.2d 180; *Bernard Food Industries, Inc. v. Dietene Co.* (7th Cir. 1969), 415 F.2d 1279; Annot. (1972), 42 A.L.R.3d 807; 1 Hanson, Libel & Related Torts sec. 154.) However, the holdings as to when publication is considered to occur have not been uniform. (42 A.L.R.3d 807.) The plaintiff contends that the "discovery rule" should be applied in this case of a credit reporting agency which prohibits distribution of the information in its reports to any person who is not a subscriber to its service. That is, our holding should be that the plaintiff's cause of action did not accrue until it knew or should have known of the defamatory report.

The primary purpose of limitation periods is to require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims. *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349; 88 L. Ed. 788, 792, 64 S. Ct. 85; *Davis v. Munie,* 235 Ill. 620, 621; *Horn v. City of Chicago,* 403 Ill. 549, 560; see Note, *Developments in the Law—Statutes of Limitations,* 63 Harv. L. Rev. 1177, 1185 (1950).

The discovery rule was applied by this court in *Rozny v. Marnul,* 43 Ill.2d 54. The defendant was a surveyor who had made an inaccurate survey for the land developer, from whom the plaintiffs had purchased the real property concerned. The defendant contended that the statute of limitations ran from the time the plat was delivered to the land developer, or at least from the time that the plaintiff relied on the guaranty that had been given the developer

by the defendant. The plaintiffs urged that we follow the discovery rule, saying that at the time this court had not examined the considerations relevant in determining when an action "accrues" as that term is used in various statutes of limitation in Illinois.

In deciding whether to apply the discovery rule, this court, in *Rozny,* stated what considerations should determine whether the rule would be followed:

> "The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. (See *Skinner v. Anderson,* 38 Ill.2d 455, 458; *New Market Poultry Farms, Inc. v. Fellows,* 51 N.J. 419, 241 A.2d 633.) But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue. (See *Wanless v. Peabody Coal Co.,* 294 Ill. App. 401; *cf. Eichelberger v. Homerding,* 317 Ill. App. 125.)" (*Rozny v. Marnul,* 43 Ill.2d 54, 70.)

See also Prosser, Handbook of the Law of Torts sec. 30 (4th ed. 1971); 21 De Paul L. Rev. 234 (1971); Petersen, *The Undiscovered Cause of Action and the Statute of Limitations: A Right Without a Remedy in Illinois,* 58 Ill. B.J. 644 (1970).

The year after *Rozny* was decided this court had before it a case in which the plaintiff alleged that she had been negligently advised that a cancerous condition, which three years later required an amputation, was not malignant. (*Lipsey v. Michael Reese Hospital,* 46 Ill.2d 32.) The trial court had held that the suit which followed the amputation was barred by the two-year statute of limitations for personal injury. This court, however, followed the discovery rule of *Rozny* and held that the cause of action did not accrue until the plaintiff first discovered the cancerous condition. It was said:

"After reviewing the decisions on the question we consider that the Limitations Act should not be given the narrow construction which was imposed in *Gangloff* and *Mosby.* Such a construction often brings 'obvious and flagrant injustice.' (Prosser, Law of Torts, (3rd ed. 1964), sec. 30.) We extend the rule of time of discovery followed by us in *Rozny* and hold that, in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it. In this we join what Prosser had described as a 'wave of decisions' favoring the rule of time of discovery. E.g., *Yerzy v. Levine,* 108 N.J. Super. 222, 260 A.2d 533; *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220; *Frohs v. Greene,* (Ore.) 452 P.2d 564; *Janisch v. Mullins,* 1 Wash. App. 393, 461 P.2d 895 and also see 55 Ia. L. Rev. (1969), 486." 46 Ill.2d 32, 40.

This court also has applied the discovery rule to a products liability case. In *Williams v. Brown Manufacturing Co.,* 45 Ill.2d 418, an action was brought against a manufacturer alleging injuries from an "unreasonably dangerous" design in a trenching machine. The opinion followed this court's earlier holdings that "an action to

recover for personal injuries resulting from a sudden traumatic event accrues when plaintiff first knew of his right to sue ***." (45 Ill.2d 418, 432.) This court rejected the contention that the statute began to run when the machine left the manufacturer's control. In *Berry v. G. D. Searle & Co.*, 56 Ill.2d 548, 558-559, the plaintiff had suffered a stroke and claimed it was caused by birth control pills she had been taking. We, citing *Williams*, held that the statute began to run for her action for strict tort liability at the time of the stroke, a traumatic event she unquestionably knew of when it occurred; we did not hold that her cause of action accrued on the date of manufacture, sale, or taking of the pill.

There have been other holdings in Illinois applying the rule of discovery. In *Kohler v. Woollen, Brown & Hawkins*, 15 Ill. App. 3d 455, 460, the court, relying on *Rozny* and *Lipsey*, held that "a cause of action for legal malpractice does not accrue until the client discovers, or should discover, the facts establishing the elements of his cause of action." *Wiggington v. Reichold Chemicals, Inc.*, 133 Ill. App. 2d 776, 779, and *McDonald v. Reichold Chemicals, Inc.*, 133 Ill. App. 2d 780, 782, were cases involving sales of defective and harmful products to the employer of the plaintiffs. The court rejected the defendant's contention that the plaintiffs were barred by the two-year statute of limitations for personal injury and held that where there was no trauma, the cause of action accrued and the statute of limitations began to run at the time the plaintiff discovered or should have discovered he was injured by the defendant's conduct.

Courts have utilized the rule in a wide range of cases. This court noted in *Rozny* and *Lipsey* its widespread adoption in medical malpractice cases. Other situations in which the rule of time of discovery has been applied include: action for damages for water pollution (*Polzin v. National Cooperative Refinery Association* (1954),

175 Kan. 531, 266 P.2d 293); action for negligent damage to real property (*Basque v. Yuk Lin Liau* (1968), 50 Hawaii 397, 441 P.2d 636); action for defective design (*Chrischilles v. Griswold* (1967), 260 Iowa 453, 150 N.W.2d 94); action for legal malpractice (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 491 P.2d 421, 98 Cal. Rptr. 837); action by insurer against general agent for negligently recommending a poor insurance risk (*United States Liability Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal. 3d 586, 463 P.2d 770, 83 Cal. Rptr. 418); action against title company for careless preparation of deed (*Cook v. Redwood Empire Title Co.,* 275 Cal. App. 2d 452, 79 Cal. Rptr. 888); action against escrow holder by buyer for breach of escrow agreement (*Amen v. Merced County Title Co.,* 58 Cal. 2d 528, 375 P.2d 33, 25 Cal. Rptr. 65); action by customer against a stock broker for misfeasance (*Twomey v. Mitchum, Jones & Templeton, Inc.,* 262 Cal. App. 2d 690, 69 Cal. Rptr. 222); and action against accountant for improper preparation of tax return (*Moonie v. Lynch,* 256 Cal. App. 2d 361, 64 Cal. Rptr. 55).

The rule has been applied in actions brought under the Federal Tort Claims Act, 28 U.S.C. sec. 2401(b) (1970) (*Quinton v. United States* (5th Cir. 1962), 304 F.2d 234); the Federal Employers' Liability Act, 45 U.S.C. sec. 51 *et seq.* (*Urie v. Thompson,* 337 U.S. 163, 93 L. Ed. 1282, 69 S. Ct. 1018); and under Federal and Illinois securities laws (*Parrent v. Midwest Rug Mills, Inc.* (7th Cir. 1972), 455 F.2d 123).

Using the standard prescribed in *Rozny* for the application of the discovery rule, we have no hesitation in saying that the ends of justice in this case will be served by holding that the plaintiff's cause of action accrued at the time it knew or should have known of the existence of the allegedly defamatory report. To hold here that the plaintiff's cause of action accrued, if at all, at the time the

credit report was received by the defendant's subscribers would be to follow an abstract and mechanical reasoning in deciding when the cause of action accrued. The purpose of a statute of limitations is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions. There is no claim of any want of diligence on the part of the plaintiff, nor is there anything to suggest any increased problems of proof so far as the defendant is concerned.

The defendant is, as the appellate court described, a "nationwide credit reporting service corporation." One of its important activities is the preparation of reports of the character involved here, which the defendant distributes for a charge to its subscribers. In recent years there has been an increasing awareness of the importance and sensitivity of credit reporting from the standpoint of the persons investigated. There has been an increased recognition of the manifest injustice of permitting persons investigated to be silently wronged through inaccurate reporting. This was described in *Hood v. Dun & Bradstreet, Inc.* (5th Cir. 1973), 486 F.2d 25, 32: "A second reason for our decision is that in recent years there has been an apparent shift in emphasis from the protection of the credit reporting agency to the protection of the individual or business enterprise being investigated." Legislation has been enacted to protect individuals from abuses in this type of reporting and to make information assembled subject to disclosure to the person investigated. The Fair Credit Reporting Act, 15 U.S.C. sec. 1681 *et seq.*, for example, gives, *inter alia,* the consumer the right to correct and explain information appearing in the report.

We would note that cases involving claimed defamations by credit reporting agencies can be readily distinguished from those involving alleged defamations through so-called mass-media publication. In claimed libels involving, for example, magazines, books, newspapers, and radio

and television programs, the publication has been for public attention and knowledge and the person commented on, if only in his role as a member of the public, has had access to such published information. In addition and more importantly, a credit reporting agency does not enjoy the constitutional protections given mass-media publications. *Grove v. Dun & Bradstreet, Inc.* (3d Cir. 1971), 438 F.2d 433.

The defendant has called to our attention holdings in agreement with the appellate court's conclusion. However, each involves a simply mechanical application by a Federal court of an earlier holding by a State court. In *Wilson v. Retail Credit Co.* (5th Cir. 1971), 438 F.2d 1043, the court in one paragraph adopted the district court opinion involved. That opinion simply stated that the limitations question under Mississippi law had been decided in a State decision which was handed down in 1900. The court in *Atwell v. Retail Credit Co.* (4th Cir. 1970), 431 F.2d 1008, followed a State court holding under the Maryland statute, but it did note that the plaintiff did have knowledge of the report involved.

The order entered by the trial court dismissed the complaint on the ground that its prosecution was barred by the statute of limitations. The order made no reference to the individual counts of the complaint. The defendant's motion to dismiss set out other grounds in addition to the limitations contentions, but the trial court's recollection (per affidavit filed with the pleadings) was that the argument related principally to the limitations question. We consider the trial court erroneously dismissed the complaint and that the cause should be remanded to it for proceedings not inconsistent with this opinion. We reverse the judgment of the appellate court as to counts I and II, and without considering and approving or disapproving the reasons given by the appellate court as to count III we affirm its reversal of the trial court's action as to that count.

*Affirmed in part and reversed*
*in part and remanded.*